# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

REYNOLD PEOPLES, )
)
Plaintiff, )
) Case No. 2:11-CV-01189-NKL
v. )
)
CORIZON HEALTH, INC., ET AL, )
)
Defendants. )

## ORDER

Pending before the Court is 1) a Motion to Dismiss for Failure to State a Claim, filed by Defendant Correctional Medical Services, Inc. (n/k/a Corizon, and hereinafter "CMS) [ Doc. # 24]; 2) a Motion to Dismiss for Failure to State a Claim, filed by individual Defendants Baker, Bradbury, Conley, Green, Henry, Horner, Marcak, Patterson, Peniagua, Swarts, and Wright [Doc. # 26]; and 3) a Joint Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed by Baker, Bradbury, Conley, CMS, Green, Henry, Horner, Marcak, Patterson, Peniagua, Swarts, and Wright [Doc. # 22]. For the following reasons, the Court denies the Joint Motion to Dismiss for Failure to Exhaust Administrative Remedies and the individual Defendants' Motion to Dismiss for Failure to State a Claim, while granting CMS' Motion to Dismiss for Failure to State a Claim.

1

## I. Background.

The facts in this section are taken directly from Plaintiff Reynold Peoples' Complaint and from the medical and prison records provided by Peoples.[1] On or about the 3rd day of June, 2010, Plaintiff, an inmate at Jefferson City Correctional Center, complained of signs and symptoms of an arterial embolism. On June 3, 2010, an employee of CMS recorded that Peoples' leg was cool to touch, faint pedial pulses and a cap refill less than 3. On June 3, 2010, diagnostic studies indicated that Peoples showed no evidence of deep venous thrombosis in the left lower extremity. On June 4, 2010, Peoples sought additional medical treatment for his lower left leg by declaring a medical emergency from his cell. On June 4, an employee of CMS determined that Peoples' medical condition was not an emergency. On June 7, 2010, JCCC records indicate that a relative of Peoples called the facility with complaints about the medical treatment that Peoples was receiving. On June 7, 2010, JCCC records indicate that an employee of JCCC informed CMS, or an agent of CMS, of the concerns for Peoples' medical condition. On June 7, 2010, a CMS employee recorded that Peoples stated "I have pain in my leg and it is ice cold," but CMS offered no medical treatment. [Doc. # 29-1 at 5].

On June 9, 2010, an employee of CMS observed Peoples' left leg was cold to touch, discolored and purplish. On June 9, 2010, a CMS employee determined that

---

[1] Though the medical and prison records were attached to Peoples' briefings, not to his complaint, neither party has objected to the Court considering this evidence for purposes of the Motions to Dismiss.

Peoples' medical condition was non-urgent and that Peoples should be educated on proper access to medical care. On June 10, 2010, Peoples complained of continued leg pain. Medical personnel were notified of Peoples' medical condition.

On June 10, 2010, a CMS employee observed Peoples say that "[m]y leg is killing me, my foot feels like its on fire on the bottom.... I'm in so much pain." [Doc. # 29-1 at 9]. CMS offered no medical treatment. On June 11, 2010, an employee of CMS observed Peoples complain of lower extremity pain and coolness to the touch. On June 14, 2010, Peoples was admitted to Capital Regional Medical Center in Jefferson City, Missouri.

On June 14, 2010, Peoples' sister, Mary Hanna, was notified of Peoples' poor prognosis. Peoples was diagnosed with aorthioliac occlusive disease. Multiple procedures were completed in an effort to save Peoples' leg but were unsuccessful. Peoples' left leg was amputated above the knee on June 17, 2010. Peoples was discharged from Capital Regional Medical Center on June 23, 2010. Peoples returned to JCCC with multiple incision wounds after multiple procedures at Capital Regional Medical Center. JCCC housing history indicates Peoples was housed in the facility hospital from June 23, 2010 to June 30, 2010, and again from June 30, 2010, without an end date, as of the report dated July 27, 2010.

Peoples' Complaint states that CMS' medical personnel were negligent in providing medical care to him in the following respects: failing to identify signs and

3

symptoms of an arterial embolism requiring emergency medical attention; failing to ensure that the proper diagnostic test was ordered to identify an arterial embolism; and failing to conduct a proper examination of Peoples. Peoples states that these acts constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and is thus actionable under 42 U.S.C. Section 1983.

Defendants have filed three motions to dismiss for Peoples' alleged failure to exhaust administrative remedies and to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**II.    Legal Standard**

On a motion to dismiss, the Court construes the complaint liberally, in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp*., 514 F.3d 801, 806 (8th Cir. 2008). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of a short and plain statement is to provide defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted). To satisfy this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). On a motion to dismiss, a court's evaluation of a plaintiff's complaint is a "context-specific task that requires the reviewing court to draw on its

4

judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

## III. Administrative Exhaustion

All Defendants bring a joint motion to dismiss alleging that Peoples failed to exhaust his administrative remedies. The Prisoner Litigation Reform Act provides that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), Prisoners need not allege they have exhausted administrative remedies; rather, failure to exhaust is an affirmative defense, with the burden of proof on the Defendant. *Jones v. Bock*, 549 U.S. 199 (2007); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

At this stage, Defendants have failed to show as a matter of law that Peoples failed to exhaust his administrative remedies for at least two reasons.[2] First, the plain text of the PLRA requires an "available" administrative remedy for the exhaustion requirement to be

---

[2] Peoples argues that the exhaustion requirement of §1997e(a) is inapplicable to his claims involving medical treatment. The United States Supreme Court has defined the scope of § 1997e(a) as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." *Booth*, 206 F.3d at 294. Peoples argues that the exhaustion requirements of § 1997e(a) do not apply because Peoples' claims do not involve conditions of confinement and CMS employees were not government officials but rather private employees contracting with the State. Whether or not CMS employees qualify as 'government officials' under § 1997e(a), a denial of medical treatment clearly represents a condition of confinement triggering the exhaustion requirement. *See e.g. Witzke v. Femal*, 376 F.3d 744, 751 (7th Cir. 2004) (an action "alleging deliberate indifference to medical needs is an action with respect to prison conditions that therefore requires administrative exhaustion under Section 1997e(a)").

5

triggered.³ At the time of these incidents, JCCC had in place an offender grievance procedure. Peoples admits that he did not file a grievance with respect to the allegations against Defendants. [Doc. # 29 at 10]. However, at this early stage of litigation, this admission is an insufficient basis for dismissal. The Defendants rely solely on the fact that at least one general grievance procedure exists at the prison, and that Peoples did not file a grievance under this system. However, nothing in the pleadings establishes that such a grievance procedure would have applied to Peoples' situation, a medical emergency requiring immediate treatment. Further, CMS is a private corporation, which is contracted to provide healthcare to state inmates. The pleadings do not establish that Peoples' claims against CMS could have been handled internally within the prison's general grievance procedure or that the prison grievance procedure would have been able to take any responsive action to Peoples' emergency medical complaints. *See Stevens v. Goord*, 2003 WL 21396665, *5 (S.D. N.Y., June 16, 2003) (holding that a private prison medical provider failed to meet its burden of showing that the prison grievance procedure would actually have authority over claims against it), *adhered to on reargument*, 2003 WL 22052978 (S.D. N.Y., Sept. 3, 2003). In fact, a genuine dispute of material fact appears to exist on this issue, as People has stated his belief that grievances about medical

---

³ Defendants cite *Booth v. Churner*, 532 U.S. 731 (2001), to argue that prisoners are required to exhaust all administrative processes regardless of the relief offered through these procedures. However, Booth's holding is not so sweeping as to suggest that a prisoner must exhaust an administrative process even if the process does not apply to an inmate's particular complaint.

6

care were "handled exclusively by the entity in charge of providing medical service at the facility, CMS." [Doc. # 29 at 7]. If CMS were in charge of overseeing grievances relating to medical emergencies, or healthcare complaints in general–or if prisoners had a reasonable belief that this was the case– then a failure of Peoples to file a grievance under the prison's administrative system would not be a failure to exhaust under Section 1997e(a*). See Giano v. Goord*, 380 F.3d 670, 679-80 (2d Cir. 2004) (holding that a prisoner who relies upon a reasonable interpretation of prison regulations that proves to be mistaken is justified in having failed to exhaust properly). There is also the related question of whether the processes utilized by Peoples–for example, his repeated complaints to expert medical staff, and his relative's phone call to the prison about Peoples' medical treatment–satisfied any exhaustion requirement by giving notice to the prison of Peoples' condition and allowing him to communicate his grievance to the appropriate medical and prison authorities. During discovery, the parties can provide further facts about these issues.

Second, even if Peoples were found to be required to exhaust his remedies under the prison's grievance procedure, it is not clear that the administrative process was available to Peoples based on the specific facts of his situation. A genuine dispute of material fact exists as to whether Peoples' medical condition prevented him from filing a grievance. The JCCC grievance policy requires inmates to initiate the grievance procedure within 15 calendar days from the date of the alleged incident. Peoples states

7

that the wrongful conduct occurred from June 3 to June 14, 2010, making his deadline for filing June 18, 2010, for the conduct on June 3, 2010, and June 29, 2010, for the conduct on June 14, 2010. However, the pleadings and records indicate that throughout this period, Peoples endured severe pain and was hospitalized for much of the time. Peoples reports that after being hospitalized from June 14 to June 23, he returned to JCCC and was housed in the prison hospital to recover from the amputation. There is a genuine dispute here as to whether Peoples would be capable during any of these stages of filing a formal grievance.[4] More facts will have to be developed in discovery of Peoples' condition before, during and after surgery in order to clarify this issue.

Defendants argue that even if Peoples were physically unable to initiate a grievance within the deadline period, he could have filed one at a later date. However, in addition to not showing that this procedural mechanism would be the appropriate means of handling Peoples' grievance, Defendants have failed to meet their burden of showing

---

[4] *See Ellington v. Wolfenbarger*, 2010 WL 891278, *3 (E.D. Mich.,2010) (claim alleging that remedies were unavailable to plaintiff because of his injuries could not be dismissed at the pleading stage); *Jones v. Carroll*, 628 F. Supp. 2d 551, 558 (D. Del. 2009) (allegation that prisoner could not grieve because he was heavily medicated after surgery presented a jury question; "although plaintiff was described in the medical records as being oriented and ambulatory, a postsurgical patient's ability to follow directions from a nurse does not necessarily equate to the ability to independently perform new tasks."); *Barretto v. Smith*, 2009 WL 1271984, *6 (E.D. Cal., Mar. 6, 2009) (holding failure to pursue timely grievance was not dispositive where prisoner had been hospitalized and in prison infirmary with pain and discomfort during the relevant period), *reconsideration denied*, 2009 WL 1119513 (E.D. Cal., Apr. 24, 2009); *Macahilas v. Taylor*, 2008 WL 220364, *4 (E.D. Cal., Jan. 25, 2008) (denying summary judgment to defendants where prisoner said "his mind was too clouded" by a physical illness to grieve timely).

that a late filing would be permitted by the prison or otherwise possible for an inmate in Peoples' situation. Here, even though Peoples' complaints to CMS initially went unheeded, he was later hospitalized and his leg amputated. There is a plausible argument that after this medical treatment was given, there was nothing to exhaust.[5] Further, Defendants have pointed to no law establishing that an inmate who can be excused from an exhaustion requirement due to disability would still be required to exhaust his remedies outside the filing period. For the above reasons, Defendants have failed to meet their burden of establishing a failure to exhaust as a matter of law at this stage of the litigation.

## IV. Failure to State a Claim

Defendants also bring two Motions to Dismiss for Failure to State a Claim, one by individual CMS employees and the other by CMS.

Peoples brings his claims under 42 U.S.C. §1983. The Supreme Court has stated that " a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" in order to state a cognizable claim under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, deliberate indifference of a serious medical need can be shown through grossly incompetent or inadequate care. *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

---

[5] *See Dixon v. Goord*, 224 F. Supp. 2d 739, 749 (S.D. N.Y.2002) ("The exhaustion requirement is satisfied by resolution of the matter, i.e ., an inmate is not required to continue to complain after his grievances have been addressed.").

9

Here, Peoples has pled sufficient facts to state a cognizable claim that CMS medical staff were deliberately indifferent to the severity of his condition, something beyond gross negligence.  Peoples contacted medical personnel at least 6 times, complaining of severe, even debilitating pain.  He complained at various times of alarming symptoms, such as a left leg that was cold to touch, discolored and purplish, all of which were documented by staff in reports.  Yet, even after making such complaints as early as June 3, Peoples was provided no treatment until he was hospitalized on June 14, at which time hospital staff were unable to save his leg from amputation.  In this type of severe medical situation, with documentation of obvious physical symptoms and severe complaints of pain, there is a reasonable possibility that staff were not just negligent in failing to treat Peoples, but in fact were deliberately indifferent to obvious signs of extreme suffering and ill health, thus constituting an Eighth Amendment violation.  Thus, the Motion to Dismiss of the individual CMS staff members is denied.

CMS also brings a Motion to Dismiss based on two other arguments: first, that Peoples may not bring a Section 1983 claim based on respondeat superior and second, that Plaintiff's Section 1983 claim based on CMS' policies and procedures does not plead sufficient factual matter to survive a motion to dismiss.

Section 1983 does not allow a claim against a municipality or government officials based on respondeat superior.  *See e.g. Aschcroft v. Iqbal*, 556 U.S. 662 (2009).  None of the cases cited by Defendants concern a private corporation or its employees who are

being sued under Section 1983 for providing services in place of the government. However, the Court need not address this issue, for Peoples states that he is not bringing a respondeat superior claim under Section 1983. [Doc. # 30 at 2]. To the extent that the complaint suggests such a claim, Peoples has dismissed it through this disclaimer. However, Peoples indicates in his briefing that he is bringing a separate negligence claim against the individual Defendants, and his respondeat superior claim against CMS is based on that negligence, not a claim under Section 1983. However, his complaint makes no mention of a separate negligence claim grounded in state law against any of the Defendants.[6] If Peoples wishes to now pursue a supplemental state law claim grounded in negligence, he will have to file a motion to amend his complaint.

As for the claim against CMS for its custom or policies, Peoples fails to state a claim as a matter of law. To survive a motion to dismiss, Peoples must provide facts alleging "a continuing, widespread, persistent pattern of unconstitutional misconduct" by CMS employees, as well as "[d]eliberate indifference to or tacit authorization of such conduct by [] policymaking officials after notice to the officials of that misconduct." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590-91 (8th Cir. 2004) (citing *S.J. v. Kansas City Mo. Pub. Sch. Dist.*, 294 F.3d 1025, 1028 (8th Cir.2002)). Even if Peoples' pleadings indicate that CMS may have been given notice of his

---

[6] Peoples does use the word "negligent" throughout the complaint. However, since the complaint makes no reference to a negligence claim, and instead only discusses a Section 1983 claim, the Court has assumed that the use of 'negligent' was intended to refer to Defendants' alleged deliberate indifference.

11

condition, he has not pled any facts to suggest a pattern of unconstitutional misconduct by CMS employees, as the pleaded facts are limited to employees' treatment of Peoples in this particular medical emergency. As a result, he has not pled a cognizable claim against CMS for its custom or policies.

## IV. Conclusion

For the foregoing reasons, it is hereby ordered that the Joint Motion to Dismiss for Failure to Exhaust Administrative Remedies [Doc. # 22] and the individual Defendants' Motion to Dismiss for Failure to State a Claim [Doc. # 26] are DENIED, while CMS' Motion to Dismiss for Failure to State a Claim [Doc. # 24] is GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 21, 2012
Jefferson City, Missouri